1067

Barbara Nix WILSON, Respondent v. Michele Michael HIGGINS, f/k/a Michele Michael Wilson, Robert Edwin Wilson and Dargin Ann Wilson, a minor under the age of eighteen (18) years, of whom Michele Michael Higgins, f/k/a Michele Michael Wilson, is Appellant.

(363 S. E. (2d) 911)

Court of Appeals

*Walter B. Todd, Jr.*, Columbia, *for appellant.*

*Kenneth M. Mathews* and *H. Bruce Williams*, Columbia, *for respondent.*

Heard Nov. 10, 1987.

Decided Dec. 14, 1987.

GOOLSBY, Judge:

Barbara Nix Wilson commenced this action against Michele Michael Higgins, Robert Edwin Wilson, and Dargin Ann Wilson to terminate Mrs. Higgins' parental rights to Dargin and to adopt the child. Mrs. Wilson is Dargin's stepmother. Mrs. Higgins, the natural mother of Dargin, crossclaimed for change of custody and child support and, in the alternative, for structured visitation. The trial court, finding that Mrs. Higgins had 'wilfully failed to visit the child," terminated her parental rights and ordered the adoption. Mrs. Higgins appeals. We reverse and remand.

In cases involving termination of parental rights, the Court of Appeals has jurisdiction to determine the facts based on its own "view of the weight of the evidence." *S. C. Department of Social Services v. Martell*, 279 S. C. 289, 290, 307 S. E. (2d) 601, 602 (1983). Indeed, we may make our own findings regarding whether "clear and convincing evidence supports termination." *S. C. Department of Social Services v. O'Banner*, 291 S. C. 253, 254, 353 S. E. (2d) 151 (Ct. App. 1987).

Mr. Wilson and Mrs. Higgins were once married. Dargin, who was born in 1979 shortly after their marriage, has lived with Mr. Wilson since July 1982 when Mrs. Higgins, after being separated from Mr. Wilson for six months, left South Carolina with Joey Lee Higgins. The latter is now her husband.

In February 1983, the trial court granted Mr. Wilson a divorce on the ground of adultery. It also gave Mr. Wilson full custody of Dargin; however, the order provided that Mrs. Higgins would have "reasonable visitation rights" with regard to the child.

Mrs. Higgins returned to South Carolina not long after the divorce and, with Mr. Wilson's permission, visited with Dargin.

Mrs. Higgins' initial visits with Dargin took place at the home of Mr. Wilson's parents. Mr. Wilson later allowed Mrs. Higgins to visit with Dargin in her own home but he refused her requests to keep the child overnight. He also refused requests from Mrs. Higgins and her husband for regular scheduled visits with Dargin.

Every time Mrs. Higgins visited with her daughter, Mr. Wilson required her to have his express permission beforehand. Throughout, Mr. Wilson insisted on Mrs. Higgins rigorously adhering to the hours of visitation that he set. Whenever he did allow visitation, he usually let Mrs. Higgins pick Dargin up on Saturdays no earlier than 10:00 a.m. and he required her to return Dargin by no later than 6:00 p.m.

Although Mrs. Higgins when exercising her visitation rights always followed to the letter the rules established by Mr. Wilson, he refused her requests for extended visitation with the child and denied Mrs. Higgins' pleas for additional opportunities to visit more frequently with Dargin.

In October 1983, Mr. Wilson married Mrs. Wilson.

Mr. Wilson kept meticulous charts regarding the visits Mrs. Higgins had with Dargin prior to the initiation of this action. These charts show that Mrs. Higgins visited Dargin twelve times in 1983 for a total of seventy-two hours, nine times in 1984 for a total of fifty-four hours, and four times in 1985 for a total of twenty hours.

Mrs. Higgins last visited with Dargin on April 13, 1985. She thereafter broke off visiting with Dargin because she felt that she had to "beg" her former husband for the right.

Mrs. Wilson brought the instant action a little more than six months after Mrs. Higgins' last visit with Dargin. The petition is dated October 31, 1985.

A guardian ad litem appointed by the trial court recommended that the court not terminate Mrs. Higgins' parental rights and that it prescribe a structured visitation schedule for Mrs. Higgins. The trial court, however, chose to disregard these recommendations and terminated Mrs. Higgins' parental rights.

Mrs. Higgins argues that clear and convincing evidence does not support the termination of her parental rights on the ground that she wilfully failed to visit her child.

Section 20-7-1572(3) of the South Carolina Code (1976) allows the family court to order the termination of a parent's parental rights upon a finding that "[t]he child has lived outside the home of [the] parent for a period of six months, and during that time the parent has wilfully failed to visit the child." In determining the question of whether to

terminate parental rights for failure to visit, "it must be shown that the parent was not prevented from visiting by the party having custody. . . ." S. C. Code of Laws § 20-7-1572(3) (1976).

Statutes that provide for the termination of parental rights of natural parents must be strictly construed in favor of the parent and the preservation of the parent-child relationship. *South Carolina Department of Social Services v. Harper,* 284 S. C. 212, 325 S. E. (2d) 71 (Ct. App. 1985).

It is undisputed that Mrs. Higgins did not visit Dargin during the six-month period immediately preceding the institution of this action. Still, the question of whether she wilfully failed to do so must be considered in light of the attendant circumstances. *See Id.* (the question of abandonment is one of intent to be determined by the facts and circumstances of each case). A finding of a wilful failure to visit will not be predicated upon parental conduct that can be reasonably explained. *See In re Burns,* 474 Pa. 615, 379 A. (2d) 535 (1977) (a finding of abandonment will not be based upon parental conduct which is reasonably explained).

We do not think the trial court's finding that Mrs. Higgins wilfully failed to visit her child is supported by clear and convincing evidence, especially when the totality of the circumstances is considered. The most that can be said is that Mrs. Higgins simply despaired of exercising her visitation rights because of Mr. Wilson's conduct in placing strict limitations on her rights to visit her daughter. *Cf. Schwaiger v. Headrick,* 281 Ala. 392, 203 So. (2d) 114 (1967) (wherein misunderstandings caused father not to visit child).

Also, we cannot say that Mrs. Wilson proved by clear and convincing evidence that Mrs. Higgins was not prevented by Mr. Wilson from visiting Dargin when the actions of Mr. Wilson in rigidly restricting Mrs. Higgins' visits with Dargin are considered in conjunction with the rather indefinite provision in the divorce decree that specified she was to have "reasonable visitation" rights. *Cf.* 24 Am. Jur. (2d) *Divorce and Separation* § 986 at 976-77 (1983) ("[A] decree that the defendant shall have the right to visit his children

'at reasonable times and places' is too indefinite to be enforced.").

The order terminating Mrs. Higgins' parental rights and allowing Mrs. Wilson to adopt Dargin, therefore, is reversed. We do not reach the issue directed at the trial court's failure to find that termination of Mrs. Higgins' parental rights would be in the best interests of her child. *See* 43 C.J.S. *Infants* § 40(b) at 159-60 (1978) ("As a general rule, the best interests of the child concerned are an important consideration where termination of parental rights is sought, and, in fact, have been described as the primary or paramount consideration."); *cf.* S. C. Code of Laws § 20-7-1564 (1976) (specifying the contents of a petition for termination of parental rights and omitting the requirement that the termination be in the best interests of the child).

Because we agree with the guardian ad litem's recommendation that the visitation rights of Mrs. Higgins should be structured, we remand the issue of visitation to the trial court for it to fashion a structured visitation schedule for Mrs. Higgins and further provide for her visitation rights. *See* 24 Am. Jur. (2d) *Divorce and Separation* § 986 at 976 (1983) (visitation rights should be definite and certain and should spell out the times, places, and circumstances of visitation).

Reversed and remanded.

GARDNER, J., and LITTLEJOHN, Acting Judge, concur.