**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Felecia Martina Baker and Jim Dewayne Conyers,
Defendants,

Of whom Felecia Martina Baker is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2017-000751

---

Appeal From Horry County
Jocelyn B. Cate, Family Court Judge

---

Unpublished Opinion No. 2018-UP-154
Submitted March 8, 2018 – Filed April 9, 2018

---

**AFFIRMED**

---

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

Ernest Joseph Jarrett, of Jenkinson Jarrett & Kellahan,
PA, and William Evan Reynolds, both of Kingstree, for
Respondent.

Ian Andrew Taylor, of Taylor Law Office, of Pawleys Island, for the Guardian ad Litem.

———————

**PER CURIAM:**  Felicia Martina Baker (Mother) appeals the family court's order terminating her parental rights to her minor children (Son and Daughter).  On appeal, Mother argues termination of parental rights (TPR) is not in the children's best interest.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is satisfied and TPR is in the child's best interest.  S.C. Code Ann. § 63-7-2570 (Supp. 2017).  "In a [TPR] case, the best interests of the children are the paramount consideration."  *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000).  "The interests of the child shall prevail if the child's interest and the parental rights conflict."  S.C. Code Ann. § 63-7-2620 (2010).  "Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."  *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013).

Viewed from the children's perspective, we find TPR is in their best interest.[1]  Mother has an extensive history with the Department of Social Services (DSS).  DSS first became involved with this family in 2006, when Son was approximately five years old and Daughter was approximately three.  That year, the family court

———————

[1] Mother does not appeal the statutory grounds for TPR, and we decline to address them.  *See Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653-54 (2006) ("This unappealed ruling is the law of the case and requires affirmance."); *id.* at 65, 624 S.E.2d at 654 (acknowledging "procedural rules are subservient to the court's duty to zealously guard the rights of minors" but "declin[ing] to exercise [its] discretion to avoid application of the procedural bar" (quoting *Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000))).

found Mother physically neglected the children and ordered her to complete a placement plan. However, that action ended in April 2007 with the family court placing custody of the children with their grandparents, relieving DSS of providing further services, and ordering "[t]here shall be no change in custody without DSS being notified and made a party."

In 2014, DSS initiated a removal action for Son after learning he was living with Mother. In 2015, DSS initiated a removal action for Daughter after learning her grandparents could no longer care for her. The family court ordered a new placement plan for Mother, and DSS made referrals for services. However, Mother made little progress. Emily Blewitt, an employee at Shoreline, testified about Mother's sporadic attendance in drug treatment. Mother was initially assessed at Shoreline in November 2014, and she was discharged twice due to lack of engagement and failure to attend. Mother's third assessment occurred in August 2016, approximately five months before the TPR hearing. According to Blewitt, Mother had not made much progress, partially because she "continued to attend sessions late or leave early." Blewitt stated Mother tested positive for drugs and admitted to using marijuana in November 2016. Although Mother had attended drug treatment off and on since 2014, she was only in "the beginning to mid stage" of treatment, she had never been "stepped down" to a lower level of care, and she refused to submit to drug screens in December 2016 and January 2017.

Compelling evidence shows Mother's behaviors and drug addiction are negatively impacting the children. Christina Ricks, a foster care case manager with DSS, testified Daughter's "behavior [was] a direct reflection of her contact with Mother." Ricks also explained Mother did not consistently attend visitation and Daughter had behavioral problems after Mother missed visits. Likewise, the Guardian ad Litem acknowledged Daughter had a difficult time when Mother missed visitation. Scott Grainger, who provided family counseling, testified Mother had "role confusion" and "interact[ed] with the children more as an equal than as a parent/child relationship." Grainger testified the children made adequate progress in therapy but wanted resolution and closure. Jim Dewayne Conyers (Father) did not believe Mother's contact with the children was positive because it interfered with what he was "trying to instill in" the children; he explained, "It's just certain things that she'll allow, that I wouldn't allow, so then I have to go back and correct that." When asked whether Mother would support or counter his efforts with the children, Father responded, "Honestly, I think she'll be against it."

Finally, the evidence showed the children's behaviors had improved. Grainger testified Son had behavioral problems when he entered foster care; as a result, he

was placed in a group home with more structure.  Son responded well to the structure and had improved.  Grainger stated Daughter was stable.  Based on the foregoing, we find compelling evidence shows Mother's behaviors are negatively impacting the children, and Mother's history suggests she may interfere with Father's efforts at providing stability.  Thus, we find TPR is in the children's best interest.

**AFFIRMED.**[2]

**LOCKEMY, C.J., and WILLIAMS and KONDUROS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.